UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY DELUCA,

       Plaintiff,

v.                                                                          Case No. 06-12552
                                                                   Honorable Patrick J. Duggan

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 25, 2007.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

Plaintiff Anthony Deluca ("Plaintiff") filed this putative class action lawsuit on June 8, 2006, alleging that Defendant Blue Cross and Blue Shield of Michigan ("BCBSM") has engaged in conduct violating its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101-1461.  Presently before the Court is BCBSM's motion to dismiss, filed September 11, 2006, in which BCBSM moves for an order dismissing Plaintiff's complaint for lack of subject matter jurisdiction.  Specifically, BCBSM argues that Plaintiff lacks standing to pursue his claims.  Plaintiff filed a response to BCBSM's motion on October 30, 2006; BCBSM

filed a reply on November 13, 2006. The Court held a hearing on BCBSM's motion on December 21, 2006.

### I.     Standard Applicable to BCBSM's Motion

Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). As the Sixth Circuit described these two categories of motions:

> A *facial* attack is a challenge to the sufficiency of the pleading itself. On such motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party . . . A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id*. (internal citations omitted)(emphasis in original). It is the plaintiff's burden to demonstrate that the court has jurisdiction over the subject matter. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F3.d 1125, 1134 (6th Cir. 1996)(citation omitted). BCBSM claims that it is raising a factual attack to this Court's jurisdiction.

### II.    Factual Background

BCBSM is a health care corporation organized under the State of Michigan that administers and processes claims for various ERISA welfare benefit plans, including but not limited to a self-funded health benefit plan sponsored and maintained by Flagstar Bank ("Flagstar Plan"). Plaintiff's spouse is a Flagstar Bank employee. On June 1, 2006,

Plaintiff enrolled in and began to receive coverage under the Flagstar Plan as his wife's dependent. *See* Def.'s Mot., Ex. 2.

BCBSM also is the parent company of a health maintenance organization ("HMO") called Blue Care Network ("BCN"). BCBSM has negotiated agreements with various hospitals throughout Michigan with respect to the rates BCBSM will pay to the hospitals for medical services rendered to BCN participants and beneficiaries and participants and beneficiaries in self-funded ERISA plans administered by BCBSM. Plaintiff alleges that in its agreements with Michigan hospitals, BCBSM has negotiated rates more favorable to its BCN than to the ERISA plans it administers. Specifically, Plaintiff claims that BCBSM obtained the consent of the hospitals to accept lower payments from BCN in exchange for BCBSM's promise to pay those hospitals offsetting additional amounts from the self-funded ERISA plans.

Plaintiff alleges that BCBSM's conduct constitutes a breach of Sections 404(a)(1) and 406(b) of ERISA, 29 U.S.C. §§ 1104 & 1006. Plaintiff claims that, as a result of BCBSM's breach of its fiduciary duties under ERISA, the Flagstar Plan and other self-funded ERISA plans administered by BCBSM and participants and beneficiaries of those plans "have incurred greater costs than they would otherwise have incurred . . ." *See* Compl. ¶ 65. Specifically, Plaintiff claims that the plans have paid excessive reimbursement rates to Michigan hospitals. *See id*. ¶ 93. Plaintiff further claims that participants and beneficiaries have paid excessive contributions, deductibles, and/or co-payments. *See id*. ¶¶ 79 & 95.

## III.     Applicable Law and Analysis

Plaintiff brings this action pursuant to Sections 502(a)(2) and (3) of ERISA.  *See* Compl. ¶ 7.  Section 502(a)(2) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 502(a)(2).  Section 502(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 502(a)(3).  Thus to possess statutory standing to bring this lawsuit, Plaintiff must be a participant or beneficiary of a self-insured ERISA plan BCBSM administers.  Unlike the plaintiffs in *Loren v. Blue Cross and Blue Shield of Michigan*, No. 05-74908, 2006 WL 2228978 (E.D. Mich. Aug. 3, 2006), there can be no dispute that Plaintiff, who became a beneficiary of the Flagstar Plan effective June 1, 2006,[1] possesses statutory standing to pursue his claims.[2]  As this Court previously intimated in *Loren*, however, statutory

---

[1] BCBSM makes much of the fact that Plaintiff only enrolled in the Flagstar Plan one week before he filed this lawsuit.  While this suggests– as BCBSM argues– that Plaintiff only joined the plan in order to obtain standing to file the pending lawsuit, the Court does not believe that it can consider Plaintiff's motive in evaluating his statutory standing.

[2] In *Loren*, the Court found that none of the named Plaintiffs had statutory standing to pursue their claims.  Accordingly, the Court never decided the issues relevant to determining whether the present Plaintiff possesses standing.  The Court therefore disagrees with BCBSM's characterization of Plaintiff's lawsuit as "a second bite at the

4

standing under ERISA does not substitute for standing pursuant to Article III of the U.S. Constitution. *Id.*, at *5; *see also Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 201 (2d Cir. 2005) ("*Merck-Medco*"). It is the requirements of Article III standing that BCBSM argues are not satisfied in the present case.

"To satisfy Article III's standing requirements, a plaintiff must show: '(1) it has suffered an 'injury in fact' that is (1) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 523-24 (6th Cir. 2001)(quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704 (2000)). BCBSM argues that Plaintiff cannot satisfy the first requirement because he has not pled and cannot show that he incurred any greater costs– i.e. any "injury in fact"– as a result of BCBSM's alleged fiduciary violations. BCBSM points out that Plaintiff only was enrolled as a beneficiary in the Flagstar Plan for seven days before he filed the present lawsuit and he has not alleged receipt of any medical treatment or services during that short period of time. BCBSM also argues that Plaintiff cannot establish a causal connection between its alleged misconduct and any alleged increase to Plaintiff's monthly

---

apple . . ." *See* Def.'s Mot. at 1.

benefit contributions, rates of coinsurance payments, or annual deductibles.

In his complaint, Plaintiff identifies two categories of injury resulting from BCBSM's alleged fiduciary violations: (1) injury to BCBSM's self-insured ERISA plans in the form of excessive reimbursement payments to Michigan hospitals, and (2) injury to participants and beneficiaries of those plans in the form of increased contributions, co-payments, and/or deductibles. To rectify BCBSM's alleged violations of the fiduciary duties imposed by ERISA, Plaintiff seeks injunctive relief, a constructive trust to restore to the self-insured plans BCBSM's "ill-gotten gains" and any excessive reimbursement payments paid on behalf of their participants and beneficiaries, and "any other general, equitable or remedial relief the court deems just and appropriate under the circumstances." *See* Compl. ¶ 6. Although Plaintiff refers in his complaint to "excessive" co-payments, deductibles, and/or contributions allegedly paid by participants and beneficiaries because of BCBSM's conduct, *see, e.g., id*. ¶ 68(f)-(h), Plaintiff's counsel informed the Court at the motion hearing that Plaintiff is not seeking reimbursement of those monies in this lawsuit. The Court finds that Plaintiff, regardless of whether he suffered any individual loss, has standing to pursue his claims on behalf of BCBSM's self-insured plans.

As the Supreme Court stated in *Warth v. Seldin*, "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . .'" 422 U.S. 490, 500, 95 S. Ct. 2197, 2006 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1148 n.3

(1973)).  Although recognizing that Article III standing requirements remain, the Court explained that "Congress may grant an express right of action to persons who would be barred by prudential standing rules."  *Id*. at 501, 95 S. Ct. at 2006.  "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  *Id*.

Section 502(a)(2) of ERISA authorizes a beneficiary to bring an action against a fiduciary who has violated Section 409.  *Massachusetts Mutual Life Ins. Co v. Russell*, 473 U.S. 134, 140, 105 S. Ct. 3085, 3089 (1985).  The Supreme Court explained in *Russell* that "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."  *Id*. at 142, 105 S. Ct. at 3090.  The Court further noted that the "[i]nclusion of the Secretary of Labor [in the enforcement provision for Section 409] is indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole."  *Id*. at 142 n.9, 105 S. Ct. at 3090 n.9.  Following *Russell*, the Sixth Circuit has provided that, pursuant to Section 502(a)(2), participants [and beneficiaries] are authorized to sue on behalf of a plan for breach of fiduciary duty and "[p]ermitting such suits . . . is the mechanism which Congress established to enforce the plan's right to recover for a breach of fiduciary duty."  *Smith v. Provident Bank*, 170 F.3d 609, 616 (6th Cir. 1999).

Thus ERISA grants four categories of plaintiffs the right to sue a fiduciary of an ERISA plan, on behalf of the plan, for injuries incurred by the plan due to a breach of the fiduciary's ERISA duties, regardless of whether the plaintiff individually suffered any injury as a result of the breach.  *See  Merck-Medco*, 433 F.3d at 199 (holding that a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant); *Horvath v. Keytone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003)(same); *Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 148-49 (2d Cir. 1992)(noting that "ERISA's goal of deterring fiduciary misdeeds" supports a "broad view of participant standing under ERISA" and holding that a violation of Section 404 of ERISA satisfies the injury requirement of Article III).  Several other courts (although in the context of discussing when ERISA's statute of limitations begins to run) indicate that a plaintiff need not demonstrate any actual harm in order to bring an action under Section 1104 on behalf of a plan.  *See, e.g., Larson v. Northrop*, 21 F.3d 1164, 1171 (D.C. Cir. 1994).  The Ninth Circuit has expressed that plaintiffs are not required to allege or prove an actual injury to themselves or even the plan in an action alleging certain ERISA fiduciary violations– such as failure to perform for the exclusive benefit of the employer and beneficiaries and transferring plan interests to a party-in-interest.  *See, e.g., Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551-52 (9th Cir. 1990)(finding that "Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or a participant."); *see also Fin.*

*Inst. Ret. Funds*, 964 F.2d at 147 (stating, in response to the district court's holding that injuries cognizable under ERISA must entail at least some risk to plan assets, that "the statute casts a wider net").

Although the Ninth Circuit reached an apparently contradictory holding recently in *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123 (2006), this Court is not inclined to follow *Glanton* for several reasons.  First, the *Glanton* court failed to acknowledge the Circuit Court's earlier finding that under 29 U.S.C. § 1104(a) "an ERISA plaintiff may prosecute a plan fiduciary who fails to perform for the exclusive benefit of participants and their beneficiaries regardless of cost or loss to the participants and their beneficiaries." *Ziegler*, 916 F.2d at 551.  Second, the *Glanton* court did not consider how a plan would be able to redress a fiduciary violation causing the plan, but not participants or beneficiaries, harm in light of the fact that ERISA only grants four categories of plaintiff's standing to sue for fiduciary violations: the Secretary of Labor, a participant, a beneficiary, or a fiduciary.  Third, while the court found that unharmed participants and beneficiaries lack standing to sue in a representative capacity because they lack a direct stake in the outcome, participants and beneficiaries never have a personal direct stake in the outcome of a suit brought on behalf of a plan pursuant to the Supreme Court's interpretation of Section 502(a)(2).  As the Supreme Court held in *Russell* and as expressed by the *Glanton* court: "ERISA gives plan beneficiaries nothing; any monetary recovery goes to the plan– as would the benefits of any injunctive relief." *Glanton*, 465 F.3d at 1126; *Russell*, 473 U.S. at 140-42, 105 S. Ct. at 3089-90.  Finally, the *Glanton*

9

court indicates that it has reached "the same conclusion" as the courts in *Merck-Medco* and *Horvath*; however in those cases, the Second and Third Circuit Courts specifically held that participant need *not* suffer an individual injury to pursue injunctive relief against a plan fiduciary for violations of 29 U.S.C. § 1104. *See Merck Medco*, 433 F.3d at 199-200; *Horvath*, 333 F.3d at 456.

Admittedly, in many of the above-cited cases that found the standing requirements satisfied, the courts focused on a participant's or beneficiary's standing to pursue injunctive relief on behalf of the plan. In fact although finding that the plaintiff in *Horvath* had standing to pursue injunctive relief, the Third Circuit held, as BCBSM notes, that her requests for restitution and disgorgement "are individual in nature and therefore require her to demonstrate individual loss." 333 F.3d at 456. The plaintiff in *Horvath*, however, sought injunctive relief and "restitution and/or disgorgement of the amount she and other members of the putative class allegedly overpaid as a result of [the defendant's] failure to disclose [certain] information." *Id*. at 453. If Plaintiff in the present case was seeking restitution and/or disgorgement of monies *he* paid and/or for injuries *he* suffered, the Court similarly would conclude that he lacks Article III standing to seek such relief because he does not establish that he suffered any individual injury or loss. As previously indicated, however, Plaintiff is not seeking relief which would benefit him individually. The relief he is seeking is for the benefit of the Flagstar Plan. Sections 502(a)(2) and (3) of ERISA, by their express language, clearly grant a participant or beneficiary standing to pursue forms of relief other than injunctive relief *on behalf of the plan*. 29 U.S.C. §§

1132(a)(2) & (3); *see also* 29 U.S.C. § 1109. The Court finds nothing in *Horvath* or the other cases cited by the parties (except perhaps *Glanton*, *supra*)[3] to support BCBSM's claim that Plaintiff has no standing to seek relief for the benefit of the plan.

## IV.    Conclusion

Thus the Court concludes that Plaintiff, as a Flagstar Plan beneficiary, has standing to assert, on behalf of the plan, violations of BCBSM's fiduciary duties to the Plan and to seek the relief ERISA accords to a plan for such violations, regardless of whether he can show that he personally suffered or will suffer a concrete injury as a result of BCBSM's conduct.[4]

Accordingly,

**IT IS ORDERED**, that BCBSM's motion to dismiss **DENIED**.


                                           s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

---

[3] As the type of relief sought by the *Glanton* plaintiffs is not evident from the opinion itself, even if this Court found the Ninth Circuit's reasoning persuasive, it is not convinced that the decision would be relevant to the present case for the same reasons this Court distinguishes *Horvath*.

[4] As stated earlier, BCBSM also challenges Plaintiff's ability to satisfy the second prong of Article III's standing requirements (i.e. that the injury is fairly traceable to the challenged action of the defendant). BCBSM only argues, however, that Plaintiff cannot establish a causal connection between the fiduciary duties he alleges BCBSM breached and participants' and beneficiaries' alleged increased co-payments, deductibles, and premiums. BCBSM does not challenge Plaintiff's assertion in his complaint that BCBSM's fiduciary violations have caused its self-insured ERISA plans to pay excessive reimbursements to Michigan hospitals.

Copies to:
Stephen F. Wasinger, Esq.
John H. Eggertsen, Esq.
K. Scott Hamilton, Esq.
Evan Miller, Esq.
Leo A. Nouhan, Esq.