UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY DELUCA,

    Plaintiff,

v.                                                Case No. 06-12552
                                                 Honorable Patrick J. Duggan

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

    Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 23, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiff filed this putative class action lawsuit against Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), alleging that BCBSM has engaged in conduct violating its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101-1461. In his complaint, Plaintiff indicates that he is bringing this action pursuant to Sections 502(a)(2) and (3) of ERISA in order to seek relief for the following injuries: (1) injury to BCBSM's self-insured ERISA plans in the form of excessive reimbursement payments to Michigan hospitals, and (2) injury to participants and beneficiaries of those plans in the form of increased contributions, co-

1

payments, and/or deductibles. Claiming that Plaintiff is not able to pursue relief under ERISA for any injury to individual participants and beneficiaries resulting from BCBSM's alleged fiduciary breach, BCBSM now moves this Court pursuant to Federal Rule of Civil Procedure 12(f) to strike those portions of Plaintiff's complaint relating to those injuries. BCBSM's motion has been fully briefed and on May 10, 2007, this Court issued a notice informing the parties that it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(e)(2).

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

FED. R. CIV. P. 12(f). Plaintiff argues that BCBSM's motion to strike is untimely, because it was filed after BCBSM submitted a responsive pleading in this matter. Rule 12(f), however, also authorizes the court to strike matter from a complaint on its own initiative. "This grant of judicial discretion 'has been interpreted to allow the district court to consider untimely motions to strike and to grant them if doing so seems proper. . . .'" *United States v. Lot 65 Pine Meadow*, 976 F.2d 1155, 1157 (8th Cir. 1992) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380, at 652-53 (2d ed. 1990)).

Nevertheless, courts have held that a motion to strike is an inappropriate

2

procedural mechanism to challenge an allegation in a complaint that is not "redundant, immaterial, impertinent, or scandalous" or that does not state an insufficient defense. *See* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 at 390-91 (3d. ed. 2004) (cases cited therein). In its pending motion, BCBSM is not seeking to strike material simply because it is redundant, immaterial, impertinent, or scandalous.[1] Instead, BCBSM is asking the Court to rule that ERISA does not entitle Plaintiff to certain relief that he seeks in his complaint. The Court therefore believes that such a motion is more properly construed as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id*. at 392-93 (explaining that "the technical name given to a motion challenging a pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss . . .")

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. Construing the complaint in a light most favorable to the plaintiff and assuming that the plaintiff's factual allegations are true, the court must determine whether the complaint states a valid claim for relief. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421-33, 89 S. Ct. 1843, 1848-49 (1969)). A court

---

[1] While BCBSM contends that certain allegations in the complaint are immaterial, those allegations only lack materiality if the Court first holds that Plaintiff is not entitled to the relief sought therein.

may dismiss a claim pursuant to 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).

In this litigation, Plaintiff has clearly represented to the Court and BCBSM that he is not seeking individualized relief under Section 502(a)(3) of ERISA for participants or beneficiaries of BCBSM's self-insured ERISA plans.² (*See, e.g.*, Pl.'s Resp. Br. at 1; Def.'s Mot., Ex. 1 at 21.) Instead, Plaintiff has indicated that he only is seeking relief "for the plan." (*See, e.g., id*.) But as Plaintiff now clarifies in his response to BCBSM's motion, he believes the relief available for the plan under Sections 502(a)(2) and (3) of ERISA includes disgorgement of excessive contributions, co-payments, and/or deductibles participants and beneficiaries allegedly paid to Michigan hospitals as a result of BCBSM's breach of its fiduciary duties. (Pl.'s Resp. Br. at 1.) Plaintiff states the

---

²As the parties are well aware, Plaintiff made this assertion in response to BCBSM's previously filed motion to dismiss. In that motion, BCBSM argued that Plaintiff lacks standing to pursue the claims asserted in this lawsuit because he failed to plead and is not able to show that he, personally, incurred any greater costs as a result of BCBSM's alleged breaches of its fiduciary duties. To overcome BCBSM's argument, Plaintiff's counsel contended that Plaintiff need not demonstrate individual injury to establish standing because he is not seeking reimbursement of the excessive co-payments, deductibles, and/or contributions allegedly paid by participants and beneficiaries. As a result, the Court never reached BCBSM's argument that Plaintiff cannot establish the second prong necessary to satisfy Article III's standing requirements– i.e. that the alleged excessive payments are fairly traceable to BCBMS' challenged conduct. The Court finds Plaintiff's previous representation somewhat disingenuous based on Plaintiff's current assertion that he *is* seeking reimbursement of those payments, albeit via a different theory.

4

following to explain why he is entitled to recover monies for this latter injury:

> That Plaintiff sues under Section 502(a)(2) does not mean, however, that Plaintiff cannot seek restitution and other equitable remedies which require BCBSM to disgorge all amounts which it has received from the ERISA Plans as a result of its breaches of fiduciary duty, including amounts paid as co-pays by individual participants. Indeed, courts have recognized that relief to the Plan can also be obtained pursuant to Section 502(a)(3), where necessary to protect the plan and obtain complete relief for the breaches of fiduciary duty.

(*Id.* at 1-2.) BCBSM argues that, contrary to Plaintiff's assertion, this form of relief is not available under ERISA as "relief to the Plan." This Court agrees.

Pursuant to Section 502(a)(2) of ERISA, a beneficiary, among others, may bring an action for appropriate relief under Section 409 of the statute. 29 U.S.C. § 1132(a)(2). Section 409 provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan *any loss to the plan* resulting from each such breach, and to restore to such plan *any profits of such fiduciary* which have been *made through use of assets of the plan* by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a) (emphasis added). Section 409, the Supreme Court has interpreted, does not "give rise to a private right of action for compensatory or punitive relief" but only provides relief "for the plan itself." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S. Ct. 3085, 3091 (1985). As the Court reasoned in *Russell*: "[a]

5

fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id*. at 142, 105 S. Ct. at 3090. The Court further noted:

> Consistent with this objective, § 502(a)(2), the enforcement provision for § 409, authorizes suits by four classes of party-plaintiffs: the Secretary of Labor, participants, beneficiaries, and fiduciaries. Inclusion of the Secretary of Labor is indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole. Indeed, the common interest shared by all four classes is the financial integrity of the plan.

*Id*. at 142 n.9, 105 S. Ct. at 3090 n.9.

Increased contributions, co-payments, and deductibles paid by participants and beneficiaries are not "losses to the plan." *See* 29 U.S.C. § 1109(a). Instead, these amounts represent out-of-pocket expenses of individual participants and beneficiaries. Contributions, co-payments, and deductibles also are not profits "of [the plan] fiduciary" or profits "made through use of assets of the plan." *See id*. They are profits belonging to the hospitals that provided health care services to the participants and beneficiaries of the plan. The cases Plaintiff cites in his response brief, where funds are disgorged from the fiduciary to the plan and then distributed to individual participants, do not suggest otherwise. (*See* Pl.'s Resp. Br. at 2 & 12.) The relief awarded in each of those cases restored lost *plan assets* or disgorged profits *of the fiduciary* made through its *use of plan assets*.

For example in *Schering-Plough Corporation Erisa Litigation*, employees of the Schering Plough Corporation, who were participants in the corporation's employee savings plan, alleged that the assets of the savings plan lost value as a result of its fiduciaries' breach of their fiduciary duties. 420 F.3d 231, 235 (3d Cir. 2005). Specifically the participants alleged that under the savings plan they could elect to invest in one or more investment funds, one being Schering Plough's stock fund, that the corporation's stock made up a significant percentage of the value of the savings plan's assets, and that the plan's fiduciaries breached their fiduciary duties by continuing to offer the stock fund as an investment alternative when they knew that the stock's price was unlawfully and artificially inflated. *Id*. at 232-33.

Similar scenarios were presented in *Rankin v. Rotts*, 278 F. Supp. 2d 853 (E.D. Mich. 2003), and in *In re CMS Energy ERISA Litigation*, 312 F. Supp. 2d 898 (E.D. Mich. 2004). As well, in *Chao v. Hall Holding Company*, the Secretary of Labor sued fiduciaries of an employee stock ownership plan alleging that the fiduciaries breached their duties when they used *plan assets* to purchase certain stock. 285 F.3d 415 (6th Cir. 2002).

The fact that the plaintiffs were seeking restitution of plan assets or disgorgement of profits derived from plan assets, rather than relief that was "individual in nature," was the specific reason the District Court for the Southern District of New York in *Banyai v. Mazur*, – F. Supp. 2d –, 2007 WL 959066 (March 29, 2007), held that the plaintiffs possessed standing to pursue their claims. In *Banyai*, the plaintiff sought restitution of

$12.5 million of an ERISA fund's assets. In reaching its decision that the plaintiffs had standing under ERISA to pursue this relief, the district court specifically distinguished the case before it from the Second Circuit's decision in *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care LLC*, 433 F.3d 181 (2005), and the case on which the Second Circuit relied, *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003).

In *Horvath*, the plaintiff sought "restitution and/or disgorgement of the amount she and other members of the putative class allegedly overpaid [for healthcare coverage] as a result of [the fiduciary's breach of its duties]." 333 F.3d at 453. The Second Circuit concluded that such relief is "individual in nature" and that the plaintiff, therefore, had to demonstrate that she personally suffered such a loss in order to have constitutional standing to pursue her ERISA action. *Id.* at 458. In *Merck-Medco*, the Second Circuit remanded the matter to the district court to address whether certain plaintiffs had standing to seek disgorgement of profits alleged gained by the fiduciary as a result of its breach, as it was unclear from the appellate record whether the alleged misconduct caused any actual injury to the plaintiffs, such as in the form of increased prescription drug payments. 433 F.3d at 202-03.

The present matter is not distinguishable from *Merck-Medco* and *Horvath* to the extent Plaintiff seeks restitution of excessive contributions, co-payments, and/or deductibles paid by participants and beneficiaries of BCBSM's self-insured ERISA plans. In fact this Court previously indicated as much in its opinion and order denying

8

BCBSM's previous motion to dismiss. In distinguishing *Horvath* at that time, this Court stated:

> If Plaintiff in the present case was seeking restitution and/or disgorgement of monies *he* paid and/or for injuries *he* suffered, the Court similarly would conclude that he lacks Article III standing to seek such relief because he does not establish that he suffered any individual injury or loss.

(1/25/07 Op. and Order at 10.) Thus, as in *Horvath* and *Merck-Medco*, this Court concludes that the remedy Plaintiff seeks in the form of restitution and/or disgorgement of contributions, co-payments, and deductibles is individual in nature, not relief to the plan.

Section 502(a)(3) of ERISA also does not entitle Plaintiff to this remedy. This section provides that an action may be brought "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). As this Court discussed in *Loren v. Blue Cross and Blue Shield of Michigan*, Section 502(a)(3) does not authorize claims for monetary relief not typically available in equity. No. 05-74908, 2006 WL 2228978, at *6 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S. Ct. 708, 712 (2002)). The Court further held in *Loren* that relief in the form of compensation for increased contributions, co-payments, or deductibles allegedly paid to a hospital constitutes restitution at law, not equity. *Id.*

The Court therefore holds that, pursuant to Sections 502(a)(2) and (3) of ERISA, Plaintiff is not entitled to monetary relief based on the out-of-pocket expenses allegedly

9

incurred by himself or participants and beneficiaries of BCBSM's self-insured plans.

Accordingly, the Court dismisses Plaintiff's request for such relief.

**SO ORDERED**.

                                            s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:
Stephen F. Wasinger, Esq.
John H. Eggertsen, Esq.
K. Scott Hamilton, Esq.
Robert Hurlbert, Esq.
Leo A. Nouhan, Esq.