UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY DELUCA,

       Plaintiff,

v.                                                 Case No. 06-12552
                                                 Honorable Patrick J. Duggan

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 28, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Plaintiff Anthony Deluca ("Plaintiff") filed this putative class action lawsuit on June 8, 2006, alleging that Defendant Blue Cross and Blue Shield of Michigan ("BCBSM") has engaged in conduct violating its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101-1461. The parties subsequently filed cross-motions for summary judgment. On October 31, 2007, this Court issued an opinion and order granting BCBSM's motion for summary judgment and denying Plaintiff's motion. Presently before the Court is Plaintiff's Motion for Reconsideration pursuant to Eastern District of Michigan Local Rule 7.1(g), filed November 12, 2007. With the Court's permission, BCBSM filed a response to Plaintiff's

motion on November 21, 2007.¹ For the reasons that follow, the Court denies Plaintiff's motion for reconsideration.

Local Rule 7.1(g) provides the following grounds for granting a motion for rehearing or reconsideration:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(g)(3). Thus the Court will grant a motion for reconsideration only if the moving party shows: (1) a "palpable defect," (2) that misled the Court and the parties, and (3) that "correcting the defect will result in a different disposition of the case." A motion that merely presents the same issues already ruled upon by the Court shall not be granted. *Id*.

Plaintiff contends that the Court committed four errors in its October 31, 2007 opinion and order. First, Plaintiff argues that the Court used the wrong standard to determine whether BCBSM was acting as a fiduciary when it negotiated lower reimbursement rates with Michigan hospitals for Blue Care Network ("BCN") than for its

---

¹Additionally, Plaintiff filed a reply to BCBSM' response and a brief containing supplemental legal authority, BCBSM filed a response to Plaintiff's supplemental authority, and Plaintiff filed a reply to BCBSM's response. The Court's November 15, 2007 Notice, informing the parties that it was permitting BCBSM to file a response, did not indicate that any further pleadings would be allowed. Nevertheless, the Court has reviewed and considered the additional pleadings submitted by the parties in support of and in opposition to Plaintiff's motion.

2

traditional open access arrangement and preferred provider arrangement ("PPO"). More specifically, Plaintiffs contend that the Court ignored the section of ERISA which imposes fiduciary duties on a person, like BCBSM, which exercises authority or control over plan assets.

Contrary to Plaintiff's contention, the Court specifically recognized that a person may act as a fiduciary when exercising authority or control over plan assets:

> This determination [i.e. whether BCBSM was acting as a fiduciary with respect to the Flagstar Plan] depends upon whether BCBSM was exercising any "discretionary authority or discretionary control respecting" the management or administration of the Flagstar Plan *or Flagstar Plan assets* when it negotiated hospital rate arrangements for its three health care products (tradition[al], PPO, and BCN).

(10/31/07 Op. and Order at 11 (emphasis added), quoting 29 U.S.C. § 1002(21).) The Court concluded, however, that BCBSM was not exercising authority or control respecting the management or administration of Flagstar Plan assets when it negotiated hospital rates. (*Id*.) As the Court indicated, "[f]iduciary status . . . is not an all or nothing concept," and "[a]s a result, to make out a claim for breach of fiduciary duty under ERISA, a plaintiff must show that the defendant was acting in his capacity as a fiduciary *at the time he took the actions of which the plaintiff complains*." (*Id*. (emphasis added).)

The Court explained: "While BCBSM exercises discretionary authority in its administration of the Flagstar Plan, including when it pays Michigan hospitals for services provided to plan enrollees, it was not engaged in those functions when it negotiated rate contracts with those hospitals." *Id*. The undisputed evidence established

3

that BCBSM negotiates hospital reimbursement rates generally for its three health care products (traditional, PPO, and BCN), not for any specific ERISA plan. The undisputed evidence further established that nothing in the agreement between BCBSM and the Flagstar Plan charges BCBSM with a duty to negotiate hospital rates for the plan or to act in the plan's interests when negotiating hospital rates.

Because BCBSM does not act as a Flagstar Plan fiduciary when it negotiates hospital rates with Michigan hospitals, the Court's decision to grant summary judgment to BCBSM is not impacted by whether BCBSM subsequently pays for services with Flagstar Plan or Flagstar Bank assets. In other words, even if the Court erred in finding that Flagstar Bank pays benefits out of its general assets instead of Flagstar Plan assets– as Plaintiff contends in their third claim of error– correcting the alleged error does not result in a different disposition of the case.[2]

Plaintiff contends that the Court also erred in finding that BCBSM fully informed Flagstar Bank or the Flagstar Plan Sponsor of the hospital rates that BCBSM negotiated with hospitals. The Court finds no error. What the Court found was that, before they

---

[2]Nevertheless, the Court does not believe that Plaintiff demonstrates an error in its finding that benefits are paid from Flagstar Bank, as opposed to Flagstar Plan, assets. Flagstar Bank representative Erin England declared that "[a]ll payments made to BCBSM pursuant to its ASC [Administrative Services Contract] with Flagstar Bank are made from general corporate assets of Flagstar Bank." (Doc. 57, Ex. 2 ¶ 3.) According to the Flagstar Summary Plan Description ("SPD"), for self-insured benefits such as the medical plan, "the Employer [Flagstar Bank] pays benefits out of its general assets . . ." (Doc. 48, Ex. 7 at 51.) The SPD provides that participants and beneficiaries pay part of their medical costs through before-tax contributions made under the Before-Tax Premium Payment Program (*id.* at 53); however as Mr. England explained, these contributions are not segregated but remain in Flagstar Bank's general corporate assets. (Doc. 57, Ex. 2 ¶ 4.)

contract with BCBSM, the plans receive detailed information from BCBSM regarding the hospital rates *the plans will be obligated to pay*, the actual savings the plans will incur by participating in a BCBSM plan, and the anticipated annual cost of health care coverage for the plan. Plaintiff's counsel in fact acknowledged at the October 25, 2007 motion hearing that, before a plan decides whether to renew BCBSM coverage, BCBSM informs the plan of the general projected costs the plan will have to pay and the hospital charges the plan paid during the preceding year:

> The Court: Do they tell them what they're going to have to pay?
>
> Mr. Wasinger: No, except in general projection terms so you could budget.
>
> The Court: Okay. How about at the end of the year? Haven't they told them what, in fact, they are paying the hospital charges for "A", "B", and "C".
>
> Mr. Wasinger: They've told them what they've actually paid, yes.
>
> The Court: And then if the company continues to renew, knowing those are the charges, why does someone have a right to complain because someone else is getting a better deal?

(Pl.'s Mot., Ex. A at 30.) As the Court concluded in its opinion and order, if a plan selects a BCBSM product knowing the hospital rates the plan will be obligated to pay, BCBSM is not breaching its fiduciary duty to the plan when it subsequently processes and pays hospital claims pursuant to those agreed upon rates. (10/31/07 Op. and Order at 13.)

5

The Court believes this to be true even if BCBSM is able to negotiate a better deal for BCN because plans participating in the traditional or PPO arrangements have agreed to pay higher rates.[3]

Lastly, Plaintiff argues that the Court erred in finding that, when BCBSM contracts with Michigan hospitals to pay certain rates, only BCBSM is obligated to pay those rates. Citing the definition of "sponsorship" in the "Definitions" section of BCBSM's Model Participating Hospital Agreement ("Model PHA"), Plaintiff contends that the agreements between BCBSM and the hospitals obligate BCBSM to pay the hospitals only "in the event the payor becomes insolvent." (Pl.'s Mot., citing Doc. 1, Ex. A.) However, the terms of the agreements between BCBSM and the hospitals unambiguously provide that, except in limited circumstances where the hospitals can seek certain payments directly from *plan members* (not the plans themselves), only BCBSM is obligated to make payments to the hospitals.

For example, the Preamble to the Model PHA states:

---

[3]As the Court stated during the motion hearing, if a plan continues to renew its contract with BCBSM, knowing what it is paying for hospital charges, the plan does not have the right to complain because someone else (i.e. BCN) is getting a better deal. (Pl.'s Mot., Ex. A at 30.) In response, Plaintiff's counsel stated to the Court that the plans are "entitled to pay the rates that they [BCBSM] could have negotiated . . . and not get a kickback by negotiating with a hospital to say, 'Charge these guys $10 more and give the money to Blue Care Network. . . .'" (*Id*.) This argument by Plaintiff's counsel overlooks the threshold question in deciding whether BCBSM breached its fiduciary duties: was BCBSM acting as a fiduciary to the plans when it negotiated higher rates for its traditional and PPO products in exchange for lower rates for BCN. *See Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S. Ct. 2143, 2152-53 (2000) If it was not, BCBSM does not breach its fiduciary duties to plans contracting for its PPO product when those plans subsequently incur the $10 increased rate that enabled BCN to pay $10 less.

> C. That BCBSM accepts financial responsibility for the provision of Covered Services to its Members by Hospital and Hospital accepts responsibility for providing such services within the limitation of Hospital's scope of services, *looking only to BCBSM for reimbursement*, except as otherwise provided in this Agreement; . . .

(Doc. 1, Ex. A at 1 (emphasis added).) Similarly, Article II, Section 6 of the Model PHA provides:

> <u>BCBSM Payment</u>. Hospital shall look only to BCBSM for reimbursement for Covered Services in accordance with the Reimbursement Policies, except as otherwise provided in this agreement.

(*Id.* at 5.) In the limited circumstances where the Model PHA provides that the hospital may seek payments from someone other than BCBSM, it is the members (i.e. participants and beneficiaries) receiving services and not the individual ERISA plans to whom the hospital may look.[4] (*See, e.g., id.* at 5-6.) Thus nothing in the agreements between

---

[4]As Article II, Section 8 of the Model PHA provides in part:

> <u>Hold Harmless</u>. Hospital shall not bill or collect from a Member for Covered Services or Non-Reimbursable Covered Services, except that Hospital may bill or collect *from a Member* for any one or more of the following . . .
>
> a. Amounts attributable to Non-Covered Services;
> b. Copayments and deductibles applicable to Covered Services as specified in applicable Certificates . . .
> c. Amounts attributable to Non-Reimbursable Covered Services in those limited situations where the Member specifically agrees in writing in advance of receiving such services to the following: (i) the Member acknowledges that BCBSM will not make payment for such services, (ii) the Member consents to receipt of such services, and (iii) the Member assumes financial

7

BCBSM and the hospitals obligates the ERISA plans to pay the rates negotiated between the hospitals and BCBSM.

For the above reasons, the Court concludes that it did not commit a palpable defect in its October 31, 2007 opinion and order, much less a palpable defect that, when corrected, mandates a different result in this case.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for reconsideration is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Stephen F. Wasinger, Esq.
John H. Eggertsen, Esq.
K. Scott Hamilton, Esq.
Leo A. Nouhan, Esq.
Robert P. Hurlbert, Esq.

---

responsibility for such services; . . .

(Compl. Ex. A at 5 (emphasis added).) This provision indicates that the insolvent payor referred to in the definition of "sponsorship" is the "Member," not the ERISA plan as Plaintiff suggests.